**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Brian T. LEWIS, Defendant/Appellant.**

**No. 03–6102.**

United States Court of Appeals,
Sixth Circuit.

Sept. 8, 2004.

Katrina U. Early, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

Doris A. Randle–Holt, Office of the Federal Public Defender for the Western District of Tennessee, Memphis, TN, Defendant–Appellant.

Before: MOORE and COLE, Circuit Judges; and MARBLEY,\* District Judge.

MOORE, Circuit Judge.

Defendant–Appellant Brian T. Lewis appeals his conviction for being a felon in

---

\* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

possession of a firearm for which he was sentenced to forty-eight months' imprisonment followed by three years of supervised release. Lewis contends that the district court erred in denying his motion to suppress the firearm as evidence because its discovery stemmed from statements he made without being given *Miranda* warnings. The district court found the firearm admissible because (1) Lewis consented to the search; and (2) the independent source and inevitable discovery doctrines permitted the introduction of the evidence. Without reviewing the district court's decision that the independent source and inevitable discovery doctrines permitted the admission of the evidence, we affirm the district court's decision based solely on Lewis's voluntary consent to the search that led to the discovery of the firearm.

## I. BACKGROUND

Memphis Police Department Officers Ronnie Elrod and Stacy Thomas stopped Lewis and his passenger, who apparently was later discovered to be Lewis's brother, for speeding on August 18, 2002. Although Lewis's driver's license indicated that he was a local resident of Atoka, Tennessee, Lewis explained to Officer Elrod that he was in a hurry to get back to his hotel. During the stop, Elrod smelled the odor of marijuana emanating from the rented Ford Explorer that Lewis was driving.

After receiving Lewis's verbal consent to search his vehicle, Elrod placed Lewis and his passenger in the back of his squad car so that he could conduct the search. Elrod's search uncovered an unzipped black duffel bag containing "seeds and little pieces of leaves of marijuana," a box of clear plastic sandwich bags, and a notepad and electronic key from the Fairfield Inn. Joint Appendix ("J.A.") at 61. Elrod also found a postal scale "in the console" of the vehicle. J.A. at 61–62. Elrod was aware, based on "past knowledge and [his] experience, that a lot of people deal drugs out of hotels not out of houses." J.A. at 63. Upon discovery of "the hotel key and the baggy, and all of that," Elrod decided he wanted to search the hotel room. J.A. at 71. He called Officer McCord and told him to bring a Consent to Search Form ("CSF") to the scene. Under questioning from Elrod, and before any *Miranda* warnings were given, Lewis made incriminating statements that the duffel bag was his and that he was a guest at the Fairfield Inn on American Way.

When McCord arrived, Elrod, sitting in the front of his patrol car, filled out his required part of the CFS and gave it to Lewis. Lewis, sitting un-handcuffed in the back of the patrol car with his passenger, read, appeared to understand, and signed the CFS, which contained a provision explaining his right to refuse consent. At that time, Elrod called the Fairfield Inn on American Way, verified that Lewis was a guest, and obtained the room number where he was staying. The group of police officers, Lewis, and his passenger then went to the Fairfield Inn where the officers, accompanied by Lewis went up to his room. The officers found a pistol in the night stand between the two beds and $2000 in the pocket of a pair of pants on the floor.

Lewis was indicted on August 20, 2002, on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He filed a motion to suppress evidence on November 5, 2002, which was granted in part and denied in part by the district court, approving the report and recommendation of the magistrate judge assigned to the motion hearing. The magistrate judge's recommendation and the district court's order excluded two self-incriminating statements made by Lewis

(that he owned the duffel bag and that he was a guest of the Fairfield Inn on American Way) because they were made without the benefit of *Miranda* warnings, but refused to suppress the firearm itself, on the basis that the search of the hotel room where the firearm was found was justified through the independent source doctrine, the inevitable discovery doctrine, and the consent of the defendant to the search. After the motion to suppress the firearm was denied, Lewis entered a conditional guilty plea. The district court sentenced Lewis to forty-eight months' imprisonment followed by three years of supervised release. Lewis appealed to this court, contending that the motion to suppress the firearm should have been granted.

## II. ANALYSIS

We review the district court's conclusions of law regarding a motion to suppress evidence de novo and the district court's factual findings for clear error. *United States v. Hammond*, 351 F.3d 765, 770 (6th Cir.2003). The government bears the burden of proving "through 'clear and positive testimony,'" by a preponderance of the evidence, that valid consent was obtained prior to the search. *United States v. Riascos–Suarez*, 73 F.3d 616, 625 (6th Cir.1996) (quotation omitted). Factors to be examined when determining the validity of consent include (1) the age, intelligence, and education of the individual, (2) whether the individual understands his constitutional rights and that he has the right to refuse consent, (3) the length of time the individual is detained before consenting to a search and the nature of the detention, and (4) any police use of

"coercive or punishing conduct" to obtain the consent. *Id.* Whether consent to search was given is ordinarily a question of fact; however, when the validity of that consent is based on "the application of an overriding legal principle," we review the validity de novo. *United States v. Guimond*, 116 F.3d 166, 169 (6th Cir.1997).

The magistrate judge found, and the district court agreed, that Lewis's consent to the search of the hotel room was freely and voluntarily given.[1] Lewis does not challenge this finding on appeal. Lewis instead claims in his appellate brief that his consent to the search of his hotel room "was invalid because the consent flowed from the unlawful interrogation in this case."

Following the Supreme Court's ruling in *Oregon v. Elstad*, 470 U.S. 298, 309, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), we have held that "a failure to administer *Miranda* warnings, without more, does not automatically require suppression of the 'fruits' of the uncounseled statement," but rather "[w]here the uncounseled statement is voluntary ... the 'fruits' may be admissible in the Government's case in chief." *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1517 (6th Cir.1988); *see also United States v. Crowder*, 62 F.3d 782, 786 (6th Cir.1995). Lewis contends that the Sixth Circuit's approach under *Elstad*, *Sangineto–Miranda*, and *Crowder* was undermined by *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (holding that *Miranda's* warning-based approach to custodial interrogation was constitutionally derived and could not be overruled by legislative action), and by the

---

1. The magistrate judge pointed to Lewis's age and intelligence; the brevity of the detention (under thirty minutes); that Lewis was in the company of his passenger at the time he gave consent; his prior encounters with the criminal justice system as an indicator of his familiarity with his constitutional rights; and that Lewis read, appeared to understand, and signed a search consent form. These findings specifically address the factors articulated in *Riascos–Suarez* to consider when determining the validity of consent given.

Tenth Circuit's application of *Dickerson* in *United States v. Patane*, 304 F.3d 1013 (10th Cir.2002) (holding that the physical fruits of a *Miranda* violation must be suppressed).

Subsequent to the filing of the appellate briefs in this case, the Supreme Court reversed the Tenth Circuit and held that a failure to give a suspect *Miranda* warnings does not require suppression of physical fruits of that suspect's unwarned but voluntary statements. *United States v. Patane*, —— U.S. ——, 124 S.Ct. 2620, 159 L.Ed.2d 667 (June 28, 2004). In light of the Supreme Court's holding in *Patane,* Lewis's contention that his consent to search the hotel room was invalid because it flowed from the failure to provide *Miranda* warnings before the statements admitting to ownership of the duffel and to the location of the hotel room is without merit. There is no suggestion that these statements were coerced, nor is there evidence put forth by Lewis that the statements were involuntary. The police's failure to issue Lewis a *Miranda* warning thus does not prevent the admission into evidence of the subsequently discovered firearm—the physical, nontestimonial fruit of his voluntary statements.

Because Lewis presents no other reason that his voluntary consent to the search of the hotel room should be invalidated, we conclude that his motion to suppress the firearm was properly denied. Therefore, the judgment of the district court is **AFFIRMED**.